# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| STEPHANIE R. LINDSEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 10-0285-KD-C |
| BOARD OF SCHOOL COMMISSIONERS OF MOBILE COUNTY, ALABAMA, | ) ) ) ) |
| Defendant. | ) |

## ORDER

Plaintiff Stephanie R. Lindsey brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), 42 U.S.C. § 1981, and 42 U.S.C. § 1985(3). In Count I,[1] she alleges a Title VII claim for disparate wages based on race. This action is now before the Court on the motion for summary judgment filed by defendant Board of School Commissioners of Mobile County, Alabama (the Board) (Docs. 21, 22), Lindsey's response (Docs. 26, 27, 28) and the Board's reply (Doc. 29). Upon consideration and for the reasons set forth herein, the Board's motion for summary judgment as to Lindsey's claims is **GRANTED**.

I.  Findings of fact

Plaintiff Lindsey, a black female, alleges that she was paid less money for performing the same job duties as Misty Sullivan, a white female. Sullivan was hired by the Board as a substitute bus driver in 1995 and in 1996 became a Utility Worker in the Transportation Department. (Doc. 28-6, Sullivan deposition, p. 20). As a Utility Worker, she performed some clerical functions in addition to manual labor duties. (Doc. 28-6, Sullivan deposition, p. 34).

---

[1] Count Two for violations of the Equal Pay Act, has been addressed by separate order.

In 1997, Stephen Cain, the Route Coordinator at that time, changed Sullivan's classification to Mechanic III although Sullivan was not qualified as a mechanic. (Doc. 22-3, ¶ 31, Defendant's Statement of Facts; Doc. 28-6, Sullivan deposition, p. 41, 46). Sullivan understood that Cain classified her as a Mechanic III because a clerk position was not available and the mechanic position allowed for an increase in pay. (Doc. 28-6, Sullivan deposition, p. 46). Sullivan continued to perform primarily clerical duties after her reclassification. (Doc. 28-6, p. 43).

Sullivan went on maternity leave in early 2002 and returned April 2002. (Doc. 28-6, p. 53). Plaintiff Lindsey, a Utility Worker, performed Sullivan's duties while she was on leave. (Doc. 28-6, Sullivan deposition, p. 53, 56). Upon return, Sullivan assumed her former clerical duties for a while but then changed offices and assumed the duties of an Accident Clerk, although she was never classified as an Accident Clerk. (Doc. 28-6, Sullivan deposition, p. 41).

In 2002 and 2003, the position of Accident Clerk became available. (Doc. 28-6, Sullivan deposition, p. 39, 41). Sullivan took the required typing test but did not pass the test. Thus, she did not apply for Accident Clerk and was never interviewed for that position. (Doc. 28-6, Sullivan deposition, p. 45-46, 81-83).

In September 2003, a position as Transportation Clerk was created. Sadie Cates, Transportation Coordinator, wanted Sullivan to apply. Because Sullivan could not pass the typing test, Cates requested a waiver of the typing test for Sullivan. (Doc. 28-8, Cates deposition, p. 62). The waiver of the typing test was granted by Paul Tate, Human Resources Director. (*Id*. p. 63). However, Sullivan never was hired or classified as a Transportation Clerk.

In October 2003, Sullivan was hired as a Route Specialist. (Doc. 28-6, Sullivan deposition, p. 49, 82). There was no typing requirement for this position. (Doc. 28-6, Sullivan

2

deposition, p. 82). Sullivan remained classified and paid as a Mechanic III until she took the position of Route Specialist. (Doc. 28-6, Sullivan deposition, p. 49).

Plaintiff Lindsey, a black female, began work in 2000 as a Utility Worker in the Transportation Department and primarily performed manual labor. (Doc. 28-1, Lindsey Affidavit, ¶ 2-3). In 2002, Lindsey's supervisor Bob Brunson, Fleet Manager, assigned Lindsey to assume Sullivan's clerical duties while Sullivan was on maternity leave. (Doc. 28-1, Lindsey Affidavit, ¶ 5). When Sullivan returned, Lindsey continued to perform primarily clerical duties. (Doc. 28-1, Lindsey Affidavit, ¶ 6). Lindsey continued those duties after Sullivan began to perform work as an Accident Clerk. (Doc. 28-1, Lindsey Affidavit, ¶ 6-7). From 2002 until July 2007, she remained classified and was paid as a Utility Worker but performed primarily clerical duties and drove a bus occasionally as a relief driver. (Doc. 28-1, Lindsey Affidavit, ¶11, 13, 19). Lindsey received good evaluations for her work performing Transportation Clerk duties. (Doc. 28-8, Cates deposition, p. 84).

In 2003, Lindsey discussed her duties and pay with Cates and Bob Brunson, Fleet Manager, and asked to be reclassified to a higher paying position as Sullivan had been classified. (Doc. 28-1, Lindsey Affidavit, ¶ 15). Cates told Lindsey that the Transportation Department did not have a classification available for a Clerk position. (Doc. 28-1, Lindsey Affidavit, ¶ 15).

In 2003, when the position of Transportation Clerk was created, Lindsey was not offered the Transportation Clerk position even though she had performed that work. (Doc. 28-1, Lindsey Affidavit, ¶ 16-17). The typing test was waived for all employees currently classified as clerk when the position was created. (Doc. 28-8, Cates deposition, p. 114-115). The blanket typing

test waiver did not apply to Sullivan, Stacy Bodan (a white female)[2] or Lindsey because they were not classified as clerks. (Doc. 28-8, Cates deposition, p. 115). On September 19, 2003, Cates requested in writing a waiver of the typing requirement for Sullivan and Bodan and the waiver was granted by Paul Tate, Human Resource Director. (Doc. 28-8, Cates deposition, p. 68-70). Cates testified that she did not write a request for Lindsey because she called first and was told that no more waivers would be granted. Cates testified as follows:

> I did the same thing I did when I was asking Mr. Tate for Stacy Bodan and Misty Sullivan. I called him first and he told me to put something in writing about Misty Sullivan and Stacy Bodan. When I called him about Stephanie Lindsey, I asked him if I could do the same thing. He said, no, they were not granting any more waivers. I was attempting to do for Ms. Lindsey that I had done for Ms. Bodan and Ms. Sullivan.

(Doc. 28-8, Cates deposition, p. 63). Cates testified when she was trying to get Lindsey "upgraded", she "never said she was black or white." (Doc. 28-8, Cates deposition, p. 117).

From 2003 to 2007, other positions for Transportation Clerk were posted but Lindsey "did not apply for many of the positions because they involved a specific position other than the one [she] was performing." (Doc. 28-1, Lindsey Affidavit, ¶ 19).

After Sullivan became a Route Specialist in October 2003, Lindsey had a conversation[3] with Cates about Sullivan's then open Mechanic III position and asked if she could have that position. (Doc. 28-3, Lindsey deposition, p. 28-29, 44). Cates told Lindsey that they were required by the State to replace Misty Sullivan with a state certified mechanic. (Doc. 28-3, Lindsey deposition, p. 45). At some point, after October 2003, Cates suggested that Lindsey

---

[2] Bodan worked in Student Services. (doc 28-8, Cates deposition, p. 57).

[3] Lindsey thought this conversation occurred in 2005 or 2006, but knew that it was "whenever Misty Sullivan became a route specialist." (Doc. 28-3, Lindsey deposition, p. 45). Sullivan became a Route Specialist in October 2003.

apply for a bus driver training position (CDL position) for which she was qualified. (Doc. 28-3, Lindsey deposition, p. 70). Lindsey applied but did not get the position. (*Id*.).

In March 2007, the Board posted the Transportation Clerk position which Lindsey perceived as "designed" for her "specific duties and responsibilities." (Doc. 28-1, Lindsey Affidavit, ¶ 20).[4] Lindsey had failed the typing test in December 2006 and early 2007. (Doc. 28-3, Lindsey deposition, p. 32-33; Doc. 28-1, Lindsey Affidavit, ¶ 20). Lindsey called to apply for the position but was told that since she did not pass the typing test her name could not be put "on the register to be interviewed." (Doc. 28-3, Lindsey deposition, p. 30).[5] After Lindsey failed the test, she talked with Cates who said she would talk to Paul Tate, Human Resources Director, "about waiving the typing test for" Lindsey. (Doc. 28-3, Lindsey deposition, p. 71). Cates "came back" to Lindsey and told her that "Mr. Tate wouldn't waive the typing test." (Id.).

In March of 2007, Lindsey told Cates she had been discriminated against and "pointed out that Misty Sullivan, a white female, had been allowed to perform the functions of the position despite the fact that she was unable to qualify because of typing tests." (Doc. 28-1, Lindsey Affidavit, ¶ 25). Lindsey "requested clarification and explanation" from Cates and Brunson "regarding [her] position and pay" and told Cates that she was a "victim of race discrimination." (Doc. 28-1, Lindsey Affidavit, ¶ 25). In April 2007, Lindsey filed a complaint of discrimination with her union representative after expressing her opinion to Cates and Brunson that she had been discriminated against due to her race when she was not promoted to

---

[4] Lindsey testified that there were two Transportation Clerk positions advertised close in time. She only called to put her name on the list for the position with the duties most similar to hers. (Doc. 28-3, Lindsey deposition, p. 30-32).

[5] At some time between 2003 and 2007, the typing requirement for Transportation Clerk rose from 40 words per minute to 50 words per minute. (Doc. 28-1, Lindsey Affidavit, ¶ 22).

5

Transportation Clerk. (Doc. 28-1, Lindsey Affidavit, ¶ 27).

In May 2007, Lindsey filed a "formal grievance" asserting that the Board's "failure to award [her] the position of Transportation Clerk was discriminatory and requested a review of the promotional decision." (Doc. 28-1, Lindsey Affidavit, ¶ 29).

In May 2007, Brandi Anderson, a black female was hired as the Transportation Clerk. (Doc. 28-1, Lindsey Affidavit, ¶ 33; Doc. 28-3, Lindsey deposition, p. 26). In July 2007, Lindsey was reassigned to "duties . . . consistent with a Utility Worker." (Doc. 28-1, Lindsey Affidavit, ¶ 35). From this point, Lindsey performed manual labor instead of clerical work. (Doc. 28-1, Lindsey Affidavit, ¶ 35).

Lindsey's grievance was denied in December 2007. (Doc. 28-1, Lindsey Affidavit, ¶ 30). She filed her charge with the Equal Employment Opportunity Commission (EEOC) on December 11, 2007. (Doc. 1, Complaint, p. 4). The EEOC identified Lindsey's claim as alleging that she was "discriminated against on basis of race . . . when she was denied the same wages for performing the same duties previously performed by a similarly situated white employee." (Doc. 28-8, p. 96). The EEOC determined that there was reasonable cause to believe that Lindsey had been discriminated against and paid disparate wages on basis of race and found as follows:

> Record evidence showed that the white employee worked as a clerk in the transportation department. She was classified as a mechanic although she did not meet the qualification for the position nor did she perform the stated duties. The white female went out on maternity leave in or about January 2002 and Charging Party assumed her duties. She remained in this position until around July 2007 but was never classified as mechanic or given an increase in wages.

(*Id.*) The EEOC issued its decision on September 18, 2009. (*Id.*) On or about March 12, 2010, Lindsey received her notice of right to sue. (Doc. 1, Complaint, p. 4). Lindsey filed her complaint on June 4, 2010. (Doc. 1, Complaint).

II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (Dec. 2010). The recently amended Rule 56(c) governs Procedures, and provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010).

The Board, as the party seeking summary judgment, bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). (quoting *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-999 (11th Cir. 1992), *cert. den.*, 507 U.S. 911 (1993) (internal citations and quotations omitted).

   III.   Analysis

In Count One of her complaint, Lindsey brings a claim pursuant to Title VII for "Disparate Wages Based on Race." (Doc. 1, p. 2). Lindsey alleges that she and her white predecessor, Sullivan, were both initially classified as Utility Workers and performed clerical duties but were treated differently. Lindsey alleges that Sullivan was reclassified from Utility Worker to Mechanic and paid a higher salary. But as to Lindsey, the Board "failed and refused to place her in a different job classification and failed and refused to pay her more for performing the duties of a Clerk". (Doc. 1, p. 3). Thus, Lindsey remained classified in the lower paying position of Utility Worker.

In her prayer for relief in Count One, Lindsey seeks declaratory judgment for the violation of Title VII and 42 U.S.C. § 1981. "Discrimination claims brought under Section 1981 'have the same requirements of proof and [use] the same analytical framework' as those brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)." *Garcia v. DS Waters of America, Inc.*, 372 Fed.Appx. 925, 926-927(11th Cir. 2010) (citation omitted) (brackets in original); *accord Springer v. Convergys Customer Management Group, Inc.*, 509

F.3d 1344, 1347 n. 1 (11th Cir. 2007). Thus, to the extent that Lindsey has raised claims under Title VII and §1981, the analysis will be the same.

      A. <u>Statute of limitations as to Lindsey's claims of race discrimination under Title VII</u>

The Board argues that any claim of race discrimination based on a failure to reclassify Lindsey from Utility Worker to Mechanic in 2003 when Lindsey replaced Sullivan, is barred by the limitation period because Lindsey did not file a charge with the EEOC until more than 180 days after she was told that she could not be reclassified. The Board also argues that any claim of race discrimination based upon the Board's failure to waive the typing test for the Transportation Clerk position in 2003 and late 2006, is barred by the limitation period. The Board points out that Lindsey did not file her charge with the EEOC until December 11, 2007, more than 180 days after she was told that the typing test would not be waived.

Lindsey contends that her claims were timely filed under the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. 111-2, 123 Stat 5 (2009), which states that an unlawful employment action occurs each time an employee is paid under a discriminatory compensation scheme. Lindsey also responds that even if the Fair Pay Act does not apply, the 180 day period to file an EEOC charge began when the Board's March 2007 failure to promote her to Transportation Clerk became final and binding in December 2007 after completion of the grievance procedure. Thus, Lindsey asserts that she timely filed her EEOC charge in December 2007.[6]

---

      [6] In her response, Lindsey also argues that she was constructively demoted in July 2007 and thus, filing the EEOC charges in December 2007 would have occurred within the 180 day time frame. In reply, the Board argues that Lindsey did not include a claim for constructive demotion when she filed her EEOC complaint in December 2007 and that her "judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." (Doc. 29, p. 5). Also, Lindsey did not include constructive demotion in her complaint. Count I entitled "Title VII, Disparate Wages Based on Race" includes a factual allegation that Lindsey (Continued)

Initially, Lindsey's claims that she was discriminated against based on race because the Board failed to reclassify/promote her in 2002 when she began to work as a clerk in the Transportation department, failed to reclassify/promote her to the vacant position of Mechanic III in 2003, and failed to waive the typing test requirements in 2003, 2006, and 2007 such that she could be reclassified/promoted to Transportation Clerk are <u>not</u> governed by the Lilly Ledbetter Fair Pay Act. 42 U.S.C. § 2000e–5(e)(3)(A).

The Fair Pay Act clarified "that a discriminatory compensation decision or other practice that is unlawful under [Title VII] occurs each time compensation is paid pursuant to the discriminatory compensation decision or other practice, and for other purposes." Pub. L. 111–2, 123 Stat. 5 (2009). "The Act was a direct response to the Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 127 S.Ct. 2162, 167 L.Ed.2d 982 (2007), which imposed a more restrictive interpretation of the limitations period for challenging discrimination in pay." *Tarmas v. Secretary of Navy*, 433 Fed.Appx. 754, 760 (11th Cir. 2011). The Act provides that the "statute of limitations for filing an EEOC charge alleging pay discrimination resets with each paycheck affected by a discriminatory decision." *Tarmas*, at 760 citing *Groesch*

---

continued to perform clerical duties until July 2007 when she was "assigned to work with a Certified Bus Inspector." (Doc. 1,¶ 9). In *Pleming v. Universal–Rundle Corp.*, 142 F.3d 1354, 1357 (11th Cir.1998), the Court of Appeals for the Eleventh Circuit held that the "parties frame the scope of the litigation at the time the complaint is filed." Thus, Lindsey cannot amend her complaint by including a claim of race discrimination based on constructive demotion in her response. *Gibbs-Matthews v. Fulton County School Dist.*, 429 Fed.Appx. 892, 894-895 (11th Cir. 2011) (affirming district court decision that defendant was entitled to summary judgment on Gibbs–Matthews's claim for retaliation "because it was never raised in Gibbs–Matthews's complaint, but rather was raised for the first time in response to summary judgment.") (citing *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir.2004) for its "holding that plaintiffs are not permitted to raise new claims for relief at the summary judgment stage").

*v. City of Springfield, Ill.*, 635 F.3d 1020, 1024 (7th Cir. 2011).[7]

However, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S.Ct. 2061 (2002). Thus, "'[d]iscrete acts such as ... failure to promote' are actionable only if they occurred within the timely filing period, 'even when they are related to acts alleged in timely filed charges.'" *Gay v. AirTran Airways, Inc.*, 427 Fed.Appx. 743, 745 (11th Cir. 2011) citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. at 114- 113, 122 S.Ct. at 2073-2072). "The [Lilly Ledbetter] Act did not, however, alter the limitations period for discrete employment actions." *Tarmas*, 433 Fed.Appx. at 760 (citing *Noel v. The Boeing Co.*, 622 F.3d 266, 271 (3d Cir. 2010)).[8]

Accordingly, Lindsey's claims based on the Board's failure to promote/reclassify or waive the typing tests which occurred in 2002, 2003, and 2006 are untimely because she did not file her EEOC charge within 180 days of notice of the Board's alleged racially discriminatory

---

[7] "Under the [Fair Pay] Act, an 'unlawful employment practice' occurs in the following situations: (1) 'when a discriminatory compensation decision or other practice is adopted,' (2) 'when an individual becomes subject to a discriminatory compensation decision or other practice,' and (3) 'when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.'" *Tarmas*, at 760 citing *Groesch* at 1024–25 (citing 42 U.S.C. § 2000e–5(e)(3)(A)).

[8] In *Tarmas*, the circuit court did not address whether the Fair Pay Act applied to extend the time limitation for discrete acts of discrimination because *Tarmas* did not raise the issue of disparate pay before the district court. However, the circuit court noted that other circuits including the D.C. Circuit which have addressed the issue "have not applied Tarmas's interpretation" and that "the Eleventh Circuit has also defined 'discrimination in compensation' in the same manner as the D.C. Circuit, *MacPherson v. Univ. of Montevallo,* 922 F.2d 766, 774 (11th Cir. 1991), implying that the Act would not apply to Tarmas's claims." *Tarmas*, 433 Fed.Appx. at 761, n. 6.

acts. Therefore, summary judgment is **GRANTED** in favor of the Board as to these claims.

In March 2007, the Board posted a Transportation Clerk position for which Lindsey wanted to apply. She was told again that the typing test could not be waived for that position. Lindsey filed a grievance asserting that the typing test had been waived for white employees. The grievance procedure concluded in December 2007. Shortly thereafter in December 2007, Lindsey filed a charge with the EEOC. However, a grievance procedure does not toll the running of the limitations period. *Woodruff v. National R.R. Passenger Corp.* 403 Fed.Appx. 624, 625 (2nd Cir. 2010) ("We are not persuaded by plaintiff's contention that his administrative complaint was timely filed within 300 days of the final disposition of a grievance proceeding challenging his termination because 'the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods.'") (quoting *Delaware State Coll. v. Ricks*, 449 U.S. 250, 261, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)); *see Williams v. Gwinnett County Public Schools*, 425 Fed.Appx. 787, 790 (11th Cir. 2011) (finding that the 180–day period began to run on April 3, 2009 when Williams was fired and not on May 21, 2009, the date of receipt of a letter from the "Board of Education stating that he had been terminated," because "'collateral review of an employment decision[ ] does not toll the running of the limitations period[ ].'") (quoting *Del. State Coll. v. Ricks*, 449 U.S. 250, 261, 101 S.Ct. 498, 506, 66 L.Ed.2d 431 (1980)). Thus, Lindsey's claim regarding the decision in March 2007 not to waive the typing test or promote her to Transportation Clerk is untimely.

Even if Lindsey's claim regarding the 2007 Transportation Clerk position survived a statute of limitations defense, she has failed to make a prima facie case. In order to establish a prima facie case of failure to promote, Lindsey must show that: 1) she is a member of a protected class; 2) who sought and was qualified for positions that the employer was attempting to fill; 3)

despite her qualifications she was rejected; and 4) the employer either continued to attempt to fill the positions or in fact filled the positions with persons outside the plaintiff's protected class. *See, e.g., Harrington v. Disney Regional Ent., Inc.*, 276 Fed. Appx. 863, 872 (11th Cir. 2007) (citation omitted). Lindsey has not shown that the 2007 position was filled by a person outside her protected class. The Board hired Brandi Anderson, a black female, i.e., a person within Lindsey's protected class, for this Transportation Clerk position. S*ee Edmond v. University of Miami*, 2011 WL 4495638 (11th Cir. Sept. 29, 2011) (slip copy) (finding summary judgment appropriate because Edmond had not made his prima facie case of race and national origin discrimination because the comparator he identified was of his same race and national origin). Therefore, summary judgment is **GRANTED** in favor of the Board as to Lindsey's failure to promote/reclassify her to Transportation Clerk in 2007. [9]

B. Lindsey's claims based upon 42 U.S.C. § 1981

Lindsey's § 1981 claims brought pursuant to 42 U.S.C. § 1983,[10] are subject to a four-year statute of limitations. *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336 (11th Cir. 2008) (explaining that claims based upon a post-1990 amendment to Section 1981[11] are subject to the four-year limitation period in the "catchall" statute 28 U.S.C. §1658). Lindsey filed her complaint in June 2010, thus summary judgment is **GRANTED** in favor of the Board as to any claim of race discrimination brought pursuant to § 1981 and based upon the Board's actions prior

---

[9] The failure to waive the typing test standing alone is not an adverse employment action. Rather, it is the consequence of failing to waive the typing test, *i.e.*, she was not promoted, that is at issue.

[10] The Court notes that 42 U.S.C. § 1983 is not referenced in the complaint. However, the parties have briefed on summary judgment as if that statute were invoked.

[11] Section 1981 was amended effective 1991. Pub.L. 102-166, Title I, § 101, Nov. 21, 1991, 105 Stat. 1071.

13

to June 2006.

Lindsey's complaint was filed within four years after the Board's failed to waive the typing test requirement[12] and promote Lindsey to the Transportation Clerk position posted in March 2007. However, as previously discussed in Section A, Lindsey has failed to make her prima facie case of race discrimination. *See Garcia*, 372 Fed Appx. at 926-927 (Section 1981 claims 'have the same requirements of proof and [use] the same analytical framework' as those brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).") (citation omitted). Therefore, summary judgment is GRANTED in favor of the Board as to Lindsey's § 1981 claim relating to the 2007 position of Transportation Clerk.

      C. <u>Application of the Lilly Ledbetter Fair Pay Act of 2009 to Lindsey's wage claim</u>

Although the defendant's briefs on summary judgment have defined Lindsey's claim as a failure to reclassify/promote, Lindsey captioned her claim as, "Title VII, Disparate Wages Based on Race". (Doc. 1, p. 2).[13] In support, Lindsey alleges that the Board "failed and refused to place [Lindsey] in a different job classification <u>and failed and refused to pay her more for performing the duties of a Clerk</u>" as it had done for Misty Sullivan. (Doc. 1, p. 3). Lindsey alleges she continued to work as a clerk while being paid the lower salary of a Utility Worker until July 2007, when her clerk duties ceased.

As previously stated, Lindsey contends that her claims were timely filed under the Lilly

---

[12] Lindsey took the typing test and failed in November 2006 and again in early 2007. (Doc. 28-3, Lindsey deposition, p. 32-33; Doc. 28-1, Lindsey Affidavit, ¶ 20). Lindsey sought a waiver when she applied for the Transportation Clerk position in March 2007.

[13] Lindsey's 2009 determination from the EEOC identified her claim as follows: "Charging Party alleged that she was discriminated against based on her race (black) in violation of Title VII of the Civil Rights Act of 1964, as amended, when she was denied the same wages for performing the same duties previously performed by a similarly situated white employee." (Doc. 28-8, p. 96).

Ledbetter Fair Pay Act of 2009, Pub. L. 111-2, 123 Stat 5 (2009), which states that an unlawful employment action occurs each time an employee is paid under a discriminatory compensation scheme. Lindsey argues that the Fair Pay Act, saves her Title VII claim for disparate wages from operation of the 180 day limitation period. The Board fails to address the timeliness of the wage claim but rather argues that failure to promote/reclassify claims are not a "discriminatory compensation decision or other practice" and thus the Fair Pay Act does not apply.

      D. <u>Lindsey's claim under Title VII for Disparate Wages Based on Race</u>

      In individual disparate treatment claims, "the plaintiff bears the burden of proving that the employer discriminated against him because of his race." *Cooper v. Southern Co.*, 390 F.3d 695, 723 (11th Cir.2004), *overruled on other grounds, Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456–457 (2006). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). Where there is no direct evidence of discrimination or a statistical pattern of discrimination, the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies. Under this framework, the plaintiff must establish a prima facie case of intentional race discrimination. *Id*. at 802. *See also e.g., E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002). In the alternative, the plaintiff may present "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Edmond v. University of Miami,* 2011 WL 4495638, 1 (11th Cir. Sept. 29, 2011) (slip copy) (citing *Smith v. Lockheed-Martin Corp.*, 644 F. 3d 1321, 1325 (11th Cir. 2011) (stating that "the *McDonnell-Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case.")).

      "To state a prima facie case of intentional discrimination in compensation, a plaintiff

must establish that (1) she belongs to a racial minority; (2) she received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) she was qualified to receive the higher wage." *Cooper v. Southern Co.,* 390 F.3d 695, 734-735 (11th Cir.2004) *(overruled on other grounds by Ash v. Tyson Foods, Inc.,* 546 U.S. 454, 126 S.Ct. 1195, 163 L.Ed.2d 1053 (2006) (quotation omitted). "The comparators must perform jobs similar to the plaintiff's; thus, the plaintiff must show that, in her job, she 'shared the same type of tasks' as the comparators." *Cooper.*, 390 F.3d at 735 (citing *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F. 2d 1518, 1528 (11th Cir. 1992). Lindsey must establish that she held a position "similar to that of a higher paid employee who is not a member of [her] protected class." *Crawford v. Carroll*, 529 F.3d 961, 974–975 (11th Cir. 2008) (citing *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994)).

Lindsey has identified Sullivan as her similarly situated comparator for her pay discrimination claim. There is no dispute of fact that Lindsey is black, Sullivan is white; Lindsey was paid less than Sullivan; that Sullivan and Lindsey performed substantially the same type of clerical tasks; and that Lindsey performed the work for approximately seven years without complaint from her supervisors.

A review of the Board's motion for summary judgment and brief in support indicates that the Board did not specifically discuss the elements of a prima facie case for discriminatory compensation based on race. However, the Board did give legitimate non-discriminatory reasons for not paying Lindsey a higher wage while performing duties similar to Sullivan: Lindsey was not classified as a Mechanic III and did not qualify for the position. The Board points out that Sullivan was classified to Mechanic III in 1997 by then Transportation Coordinator Cain; however, Lindsey's 2003 request to be reclassified to Mechanic III was denied by a different

16

Transportation Coordinator, Sadie Cates. The Board also presented evidence that in 2003 the State of Alabama required the Board to fill Sullivan's vacated Mechanic III position with a state certified mechanic and Lindsey was not a state certified mechanic.[14]

Lindsey has failed to rebut the Board's legitimate non-discriminatory reasons as a pretext for discrimination. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir.2000) (en banc) ("Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it."). To show pretext, Lindsey was required to show that the "the proffered reason was not the true reason for the employment decision ... either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation [was] unworthy of credence." *Kok v. Kadant Black Clawson, Inc.*, 274 Fed.Appx. 856, 858 (11th Cir. 2008) (internal quotations omitted; brackets in original) (citing *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095 (1981)).

Lindsey has not presented any evidence to rebut the fact that Sullivan was paid more, not because she was white but, because six years prior she was improperly classified as a Mechanic III. Instead Lindsey argues that the Board should have violated its own policies and state requirements in 2003 and reclassified her to the Mechanic III position. Lindsey argues that Board cannot rely on their policy because the policy was inconsistently applied and is thus evidence of pre-text. However, the evidence is that the policy has been applied consistently

---

[14] In Cates' memo to George Smith, Personnel Administrator, in response to Lindsey's EEOC complaint, Cates responded that "Mrs. Lindsey was not placed in a mechanic position because she does not meet the criteria set forth by the State Department of Education, Pupil Transportation Division. . . . No one has been placed in a mechanic slot since February 2000 that did not meet the required criteria." (doc. 28-8, Cates deposition, Exhibit 19, p. 94).

17

since 2000.

In sum, Lindsey is simply quarrelling with the Board's decision to comply with state regulations and follow its policies. *Thomas v. CVS/Pharmacy,* 336 Fed.Appx. 913, 914 (11th Cir. 2009) ("To demonstrate pretext, the plaintiff may not simply recast an employer's proffered nondiscriminatory reason or substitute his business judgment for that of the employer. Instead, he must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason. The plaintiff must be able to show both that the employer's proffered reason was false and that the true motive for the action was discriminatory.") (internal citations, quotations and brackets omitted) (citation omitted). Moreover, the Court does not act "as a super-personnel department that reexamines an entity's business decisions; rather, we limit our inquiry to whether the employer gave an honest explanation of its behavior." *Id*. (internal quotations and citation omitted).

Lindsey has not presented sufficient evidence that the motive for failing to pay her at the same rate as Sullivan for similar work was race discrimination or that the Board's proffered reasons for its decisions were false. Therefore, summary judgment is GRANTED in favor of the Board as to Lindsey's claim of disparate wages based on race.

    E. <u>Lindsey's claim for conspiracy pursuant to 42 U.S.C. § 1985</u>

Lindsey also alleged a claim pursuant to 42 U.S.C. § 1985 for conspiracy to interfere with civil rights. The Board argues that there is no evidence of a conspiracy and also that it is entitled to protection under the intra-corporate conspiracy doctrine. Lindsey did not respond to this argument and did not identify the participants in the alleged conspiracy.

The undisputed facts before the Court indicate that the Board is a public entity and that the persons identified by Lindsey are all employees of the Board. Thus, summary judgment is

granted in favor of the Board as to Lindsey's claim for conspiracy. *Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2010) (internal quotes omitted) ("[A] corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves."); *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001) (finding that the principal also "applies to public entities . . . and its personnel."); *Rehberg v. Paulk*, 611 F.3d 828, 834, 854 (11th Cir. 2010) (finding that a conspiracy under § 1985 cannot occur within a government entity").

IV. Conclusion

Accordingly, for the reason set forth herein, the Board's motion for summary judgment is **GRANTED**.

**DONE** and **ORDERED** this the 29th day of November, 2011.

/s/ Kristi K. DuBose  
**KRISTI K. DuBOSE**  
**UNITED STATES DISTRICT JUDGE**